**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Jordan Blevins, | No. 20-cv-1194 (NEB/KMM) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Paul Schnell and William Bolin, | |
| Defendants. | |

This matter is before the Court on the Defendants' motion to dismiss the amended complaint. [ECF No. 28]. The Defendants argue that the Plaintiff, Jordan Blevins, has failed to allege sufficient facts to state a claim for relief and that they are entitled to qualified immunity. [ECF No. 29]. Mr. Blevins has not filed any response to the motion to dismiss. For the reasons that follow, the Court recommends that the motion to dismiss be granted.

**I.    Background**

Because this case is before the Court on a motion to dismiss for failure to state a claim, the well-pleaded allegations in the amended complaint are taken as true, but the Court need not accept conclusory allegations or legal conclusions as true. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2008). Mr. Blevins filed an amended complaint on June 3, 2020, asserting claims against Paul Schnell, the Commissioner of the Minnesota Department of Corrections, and William Bolin, the Warden at the Moose Lake Correctional Facility ("MCF-Moose Lake") where Mr. Blevins is incarcerated. [ECF No. 4-1].

Mr. Blevins alleges that Commissioner Schnell failed to take timely action to prevent the spread of COVID-19. [ECF No. 4-1 at 5]. Although Commissioner Schnell indicated

1

that he had a plan to prevent COVID-19 from spreading in Minnesota's prisons, "non-essential personnel continued to be allowed into the prison even after inmate visitation was stopped weeks prior." [ECF No. 4-1 at 5]. Specifically, he states that "tour groups, teachers and various other unidentifiable people were seen in our prison." [ECF No. 4-1 at 5]. Inmates continued to be fed "shoulder to shoulder in the chow hall" and "some guys were getting sick and being taken in handcuffs to segregation." [ECF No. 4-1 at 5]. Cells designed to house multiple inmates do not allow for social distancing. [ECF No. 4-1 at 7]. Inmates were not given appropriate personal protection equipment such as cloth masks or disposable gloves until long after many prisoners were infected with COVID-19. [ECF No. 4-1 at 8].

Mr. Blevins "got sick and did not report [it] immediately for fear of being thrown in segregation." [ECF No. 4-1 at 5]. He was "treated very inhumanely" after he was exposed to COVID-19. He was placed on quarantine for 17 days; staff yelled at him and disrespected him in front of other inmates; and he was punished for shaving in community bathrooms. [ECF No. 4-1 at 7]. Officers Gilbert and Kinnenan harassed Mr. Blevins after he gave an interview to Minnesota Public Radio and the Star Tribune. [ECF No. 4-1 at 7]. Mr. Blevins alleges that the punishment and harassment he experienced from correctional staff was caused by Commissioner Schnell's failure to act. [ECF No. 4-1 at 8]. Finally, he notes that he wrote to the Commissioner's office and received no response. [ECF No. 4-1 at 8].

Mr. Blevins further alleges that he felt unsafe while he was in custody at MCF-Moose Lake, which is supervised by Warden Bolin. [ECF No. 4-1 at 9]. His allegations regarding Warden Bolin largely track those directed at Commissioner Schnell. For example, Mr. Blevins asserts that he was scared to report being sick from COVID-19 because he

feared being punished with segregation; he was not given appropriate personal protection equipment while engaged in cleaning duties; and social distancing was not possible in cells designed to house multiple inmates. [ECF No. 4-1 at 9]. Staff at the prison "continued to come to work sick [and] became hostile and abusive verbally" toward Mr. Blevins and other inmates. [ECF No. 4-1 at 9]. He was placed in quarantine for 17 days after his cell mate got sick, threatened with segregation, and written up for shaving in the community bathroom. [ECF No. 4-1 at 9]. Mr. Blevins states he "wrote the Warden multiple times with concerns." [ECF No. 4-1 at 10].[1]

Mr. Blevins specifically references the Eight Amendment as a basis for his claims against the Defendants. [ECF No. 4-1 at 10]. His amended complaint also reasonably suggests that he believes he was retaliated against for engaging in protected conduct, such as speaking to the media and complaining about prison conditions, in violation of his First Amendment rights. [*See* ECF No. 4-1 at 7 (discussing harassment by correctional staff after giving interviews to the press)]. Mr. Blevins seeks $250,000 in damages. [ECF No. 4-1 at 5].

## II.   Discussion

Commissioner Schnell and Warden Bolin argue that Mr. Blevins's amended complaint should be dismissed for failure to state a claim. Mr. Blevins has not responded to

---

[1]   Mr. Blevins references an attachment regarding complaints made to Warden Bolin, but no documents were attached to the amended complaint. With his original complaint, Mr. Blevins submitted copies of Offender Kite Forms addressed to Warden Bolin and others. In those documents, he complains about a lack of COVID testing, testing procedures, his time in quarantine, and discipline he received for shaving in a bathroom while he was on quarantine. Several of the kites have responses, but none is signed by the Warden. [ECF No. 1-1].

3

the motion to dismiss, which raises the possibility that he has abandoned this action and could support a decision to treat the motion as unopposed. Nevertheless, the Court has carefully reviewed the amended complaint and concludes that it does not allege facts plausibly showing that Mr. Blevins is entitled to relief. As a result, the Court recommends that the Defendants' motion be granted.

### A. Legal Standards

A complaint may be dismissed under Federal Rule of Civil Procedure 12(b)(6) where a claimant has failed "to state a claim upon which relief can be granted." When analyzing a motion to dismiss, the Court assumes that the factual allegations in the complaint are true and takes all reasonable inferences from those facts in the most favorable light to the non-moving party. *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008). However, the Court does not assume "the legal conclusions drawn by the pleader from the facts" to be true. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 545. And while the pleaded facts need not be detailed, the complaint "must include sufficient factual information to provide the grounds on which the claim rests, and to raise a right to relief above the speculative level." *Schaaf*, 517 F.3d at 549 (quotation omitted). "This standard 'demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In addition, "[a] pro se complaint must be liberally construed." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014).

> When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernable, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework.

*Id.* (quoting *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004)).

### B.    Eighth Amendment Claims

The central premise of Mr. Blevins's amended complaint is that Commissioner Schnell and Warden Bolin failed to protect him from harm in several ways, all in violation of his Eighth Amendment rights.

### *Deliberate Indifference*

To state a claim that a defendant failed to protect the plaintiff from harm in violation of the Eighth Amendment, a plaintiff must allege facts showing that (1) the conditions of their confinement create a substantial risk of serious harm, and (2) the defendant was deliberately indifferent to the plaintiff's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The first requirement is considered objectively, and requires the inmate to show that an alleged violation is objectively and sufficiently serious. *Id.* The second prong is subjective and requires the plaintiff to demonstrate that the defendant acted with a "sufficiently culpable state of mind." *Id.* "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Kulkay*, 847 F.3d at 643 (quoting *Young v. Selk*, 508 F.3d 868, 873 (8th Cir. 2007)). Satisfying this subjective prong requires more than a showing of "mere negligence." *Id.* Instead, the plaintiff must demonstrate that the defendant had a "mental state akin to criminal recklessness: disregarding a known risk to

5

the inmate's health." *Vaugh v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009) (quoting *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006)).

Because Mr. Blevins brings his constitutional claims under 42 U.S.C. § 1983, case law case law interpreting and applying that statute is also relevant to the assessment of whether his pleading fails to state a claim. For a plaintiff to state a claim under § 1983, the complaint must show the government-official defendant's personal participation in the conduct that allegedly violated the Constitution. *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014) (requiring a § 1983 plaintiff to "plead that a government official has personally violated the plaintiff's constitutional rights"). "Because vicarious liability is inapplicable to … § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Iqbal*, 556 U.S. at 676.

Supervisory prison officials are not liable under § 1983 merely because their subordinates have engaged in unconstitutional conduct. *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995). Supervisors may be held liable where they directly participate in constitutional violations or where their failure to properly supervise or train subordinates caused a constitutional violation. *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996). A failure to train claim requires a showing that (1) the relevant training practices were inadequate, (2) the defendant's failure to train subordinates reflects a deliberate and conscious choice, and (3) an alleged deficiency in the training procedures caused the plaintiff harm. *Ambrose v. Young*, 474 F.3d 1070, 1079 (8th Cir. 2007). A plaintiff must show that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional

rights, that [the defendants] can reasonably be said to have been deliberately indifferent to the need." *Id.* (internal quotation marks omitted).

### Analysis

Mr. Blevins claims that Commissioner Schnell violated his Eighth Amendment rights by failing to take appropriate or timely actions in response to the COVID-19 pandemic. Construed liberally, he complains about the following conditions inside MCF-Moose Lake: (1) after inmate visits had been stopped for several weeks, nonessential personnel were still allowed inside the prison; (2) inmates were required to eat together in a dining area in close proximity to each other; (3) inmates housed in multi-person cells could not properly socially distance from one another; (4) inmates were not given face shields, masks, or disposable gloves until long after prisoners had already been infected with COVID-19; and (5) prison staff continued to come to work even if they were sick. The Defendants argue that these claims should be dismissed because Blevins has not alleged that they had the knowledge required to establish a deliberate indifference claim, that they were personally involved in the conduct alleged, nor that there was any failure to train or failure to supervise.

For several reasonas, the Court finds that Mr. Blevins has failed to state a deliberate indifference claim against Commissioner Schnell or Warden Bolin. First, Mr. Blevins does not allege that he suffered any injury due to the presence of nonessential personnel, his proximity to other prisoners at meal times, or because masks and gloves were not made available. Mr. Blevins cannot base his Eighth Amendment claims on the legal rights of other inmates at the MCF-Moose Lake facility, and his amended complaint does not plausibly tie any of these events to an injury that he sustained. *See Hodak v. City of St. Peters*, 535 F.3d 899,

904 (8th Cir. 2008) (explaining that as "a general rule, a plaintiff may only assert his own injury in fact and cannot rest his claim to relief on the legal rights or interests of third parties").

Second, aside from the conclusory allegation that the Commissioner and the Warden failed to act promptly to stop the spread of COVID-19, the amended complaint does not allege that either Defendant was personally responsible for the conditions about which Mr. Blevins complains. For example, there is no allegation in the amended complaint that Commissioner Schnell or Warden Bolin made prisoner cell assignments at MCF-Moose Lake or decided whether to allow nonessential personnel to enter the prison after inmate visits had ceased. In the absence of some allegation that the Defendants were directly involved in the complained of conduct, Mr. Blevins has failed to state a § 1983 claim.

Third, the amended complaint cannot reasonably be read to include a failure-to-train or failure-to-supervise claim against Commissioner Schnell or Warden Bolin. Even accepting the well-pleaded allegations as true, the amended complaint contains no showing that any relevant training practices were inadequate, that the Defendants' failure to train subordinates to handle things differently was a conscious and deliberate choice, nor that any alleged deficiency in DOC training procedures caused Mr. Blevins harm. *Ambrose*, 474 F.3d at 1079. Because § 1983 does not allow recovery under a theory of respondeat superior, the mere fact that Commissioner Schnell was in charge of the DOC at the time COVID began spreading in Minnesota prison facilities does not make him liable for any constitutional violation.

Fourth, the amended complaint does not allege that the Defendants were subjectively aware of the specific conduct that Mr. Blevins claims violates his constitutional rights.

8

Mr. Blevins alleges only that he "wrote kites and grieved as far as [he could]," that he "spoke with staff," that he "wrote the commissioner's office with no response," and that he raised issues with Warden Bolin. However, he does not allege that his kites and grievances made their way to Warden Bolin or Commissioner Schnell. Nor does he state what issues were addressed in his communication to the Commissioner's office or if the Commissioner himself received it.

Finally, the Court notes that other cases have rejected allegations similar to those raised in Mr. Blevins's pleading. *See, e.g., Smith v. Jeffreys*, No. 20-1421-MMM, 2021 WL 918057, at *2 (C.D. Ill. Mar. 10, 2021) (rejecting general claims regarding a lack of social distancing and allegations that the warden was "unable to contain transmission of the virus, without more"); *Williams v. Nevada*, 2020 WL 1876220, at *4 (D. Nev. Apr. 15, 2020) (finding a complaint failed to state a colorable Eighth Amendment claim where the plaintiff alleged a lack of social distancing but provided no facts showing that "any Defendant knew of these conditions, had the authority, ability, and resources to change these conditions without endangering other prisoners at similar risk, but nevertheless unreasonably chose not to change these conditions"). Although unfortunate, the fact that inmates have been infected with COVID-19 is not enough on its own to show that Defendants behaved unreasonably in response to the risks presented by the virus. *Frohlich v. United States*, No. 20-cv-2692 (PJS/HB), 2021 WL 2531188, at *3 (D. Minn. June 21, 2021) ("[T]he law does not require perfection; the law merely requires that [the prison] act reasonably under the circumstances. A response to a substantial risk of harm may be reasonable even if the harm ultimately was not averted. … The mere fact that COVID-19 spread at [the prison] does not mean that the

facility was deliberately indifferent.") (internal quotation marks and citations omitted); *Coates v. Arndt*, No. 20-C-1344, 2020 WL 6801884, at *2 (E.D. Wis. Nov. 18, 2020) ("The plain fact is that the country is experiencing a pandemic and cases of COVID-19 are breaking out in prisons…. This does not mean that the correctional officers in charge of those prisons are subjecting inmates to cruel and unusual punishment.").

For these reasons, the Court concludes that Mr. Blevins has failed to state a deliberate-indifference claim in his amended complaint.[2]

### C. Retaliation Claim

Mr. Blevins alleges that after he contracted COVID-19 and gave an interview with media outlets, he was punished by being placed in quarantine for seventeen days and was subjected to harassment by correctional officers. Mr. Blevins does not set these allegations apart as a separate claim, but they can reasonably be construed as asserting that he was disciplined or punished because he exercised a First Amendment right.

---

[2] Mr. Blevins also alleges that he was punished for shaving in a community bathroom. Mr. Blevins attached a copy of an informal discipline report from MCF-Moose Lake indicating that he was in a bathroom shaving while he was quarantined and during a period when he was "not on quarantine time out." He lost two days of privileges, such as use of the phone, video visits, evening activities, among others. [ECF No. 1-1 at 5]. The Court does not construe this as a standalone Eighth Amendment claim. However, to the extent he intended these allegations to be so interpreted, the Court finds that the minimal loss of privileges alleged is not actionable as a matter of law. *See Carlson v. Dooly*, No. CIV. 13-0241 JNE/JJG, 2013 WL 1760284, at *2 (D. Minn. Mar. 21, 2013) (rejecting Eighth Amendment claim where plaintiff alleged that the defendants "caused him to lose certain nominal prison privileges for just a single day" and collecting cases), *report and recommendation adopted*, No. CIV. 13-0241 JNE/JJG, 2013 WL 1759908 (D. Minn. Apr. 24, 2013), *aff'd* (Sept. 16, 2013).

### *First Amendment Retaliation*

Although incarceration necessarily involves limitations on a prisoner's constitutional rights, "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "Conduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason." *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001). To prevail on a First Amendment Retaliation claim, a plaintiff must show "(1) that he engaged in a constitutionally protected activity; (2) that the defendant took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated in part by [plaintiff's] exercise of his constitutional rights." *Scheffler v. Molin*, 743 F.3d 619, 621 (8th Cir. 2014) (citing *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).

### *Analysis*

The Defendants do not argue that Mr. Blevins's contacts with the media fail to satisfy the first element of a retaliation claim. However, they argue that Mr. Blevins has not alleged their personal involvement in any retaliatory conduct and the allegation that he was disrespected and harassed by certain corrections officers after his interviews is too vague to satisfy the second element.

The Court finds that Mr. Blevins has failed to state a First Amendment retaliation claim because he does not allege that either Commissioner Schnell or Warden Bolin was personally involved in any of the allegedly disrespectful or harassing conduct that followed

his media interviews, nor even that they were aware of that behavior. As a result, neither defendant can be held liable under § 1983.

For this reason, the Court concludes that Mr. Blevins's First Amendment retaliation claim should be dismissed.

### D. Official Capacity Claims

Defendants argue that to the extent the amended complaint contains any official-capacity claims against Commissioner Schnell and Warden Bolin, those claims should be dismissed under the doctrine of sovereign immunity. The Court agrees that official-capacity claims for monetary damages are subject to dismissal based on sovereign immunity. However, the amended complaint does not indicate that he is pursuing any official-capacity claims, and he specified that both Defendants are sued in their individual capacities. In light of this reality, the Court construes the amended complaint as raising no official-capacity claims for damages, or otherwise. No recommended disposition for such absent claims is necessary.

### Recommendation

Based on the foregoing, the Court recommends that the Defendants' motion to dismiss [ECF No. 28] be **GRANTED** and this action be **DISMISSED WITH PREJUDICE**.

Date: September 15, 2021

*s/Katherine Menendez*
Katherine Menendez
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.